UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:14-00015 |
| | ) | |
| DANIEL TAYLOR | ) | |

**MEMORANDUM**

Pending before the Court is Defendant Daniel Taylor's "Motion to Compel the Government to Produce Evidence" (Docket No. 58), to which the Government has responded in opposition (Docket No. 62), and Defendant has replied (Docket No. 64). On December 16, 2015, the Court heard oral argument on Defendant's Motion, as well as the testimony of Detective William Loucks of the Metropolitan Police Department of Nashville and Davidson County ("Metro"). For the reasons that follow, Defendant's Motion will be denied.

**I.**

Defendant is charged in a two-count Indictment. Count One alleges that from on or about August 1, 2013, to on or about January 6, 2014, he conspired with others to knowingly distribute and possess with intent to distribute a detectable amount of methylone.[1] Count Two alleges that on or about January 6, 2014, he knowingly possessed with intent to distribute that same narcotic drug.

Both charges followed an investigation and a controlled delivery of a parcel. More specifically, on January 3, 2014, a United States Postal Inspector intercepted a package containing four pounds of methylone that originated in China and was to be delivered to 2616 Pleasant Green

---

[1] This Scheduled I controlled substance is more commonly known by the street name "Molly."

1

Road, Donelson, TN 37214. This package was similar to three or four packages from China that had previously been delivered to that address by the mail carrier.

On January 6, 2014, law enforcement agents prepared the intercepted parcel for delivery by removing all but 320 grams of the drugs, and secreted inside the package a tracking and GPS device provided by Metro. The tracking device was designed to alert officers when the package was moved and when it was opened.

Officers obtained an anticipatory search warrant for the delivery address. That search warrant, signed by then-Magistrate Judge Griffin, allowed for a search of the residence, outbuildings, and vehicles located on the property once the package had "been delivered and opened." (Docket No. 15 at 1).

With the location under surveillance by officers, the parcel was delivered to a female who answered the door. Shortly thereafter, Defendant was observed entering the residence. Five to ten minutes later, the device emitted slow "beeps" (heard only by those who were monitoring it) that indicated the package was being moved. Defendant was then observed carrying the parcel to his vehicle that was parked outside.

The Government claims, and Detective Loucks credibly testified, that when Defendant placed the package on (or in front of) the backseat, it emitted more incessant "beeping," indicating that it had been opened. Officers, including Loucks, approached the vehicle in which Defendant was now sitting and observed the parcel. The parcel was unopened.

After being read his Miranda rights, Defendant admitted purchasing the methylone for $3,000 from his supplier in China. A subsequent search of the Pleasant Green Road residence pursuant to the anticipatory search warrant led to no incriminating evidence. A search of Defendant

and his vehicle led to the discovery of $409 in United States currency and two cellular phones.

By way of the present Motion, Defendant requests an Order compelling the Government to "produce or provide access to" the "electronic surveillance device used to track [the] parcel, the "related GPS tracking device," and "any and all documentation related to the use of these devices in [his] case." (Docket No. 58 at 1). The Government objects on the ground that the requested discovery (most particularly the tracking device) is protected from disclosure by the law enforcement privilege.

## II.

In Roviaro v. United States, 353 U.S. 53, 59 (1957), the Supreme Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," with its purpose being to encourage citizens to come forward with information about crimes without fear of reprisal. This privilege, often called the informer's privilege, is not without exception, and a main "limitation on the applicability of the privilege arises from the fundamental requirements of fairness." Id. at 60. Thus, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. 60-61.

Since Roviaro, and with the recognition that the privilege is qualified and must yield to defendant's rights in certain circumstances, the Government's privilege to withhold disclosure has been expanded. See In re United States Dep't of Homeland Sec., 459 F.3d 565, 569 (5th Cir. 2006) ("case law has acknowledge the existence of a law enforcement privilege beyond that allowed for identities of confidential informants"); United States v. Cintolo, 818 F.2d 980, 1002 (1st Cir. 1987)

3

(noting that "two sister circuits have recognized a qualified privilege against compelled government disclosure of sensitive investigative techniques" ); Sanders v. Crotty, 2008 WL 905993, at *4 (N.D. Ill. April 3, 2008) (collecting cases for the proposition that "a number of federal circuits recognize a surveillance location privilege under common law in criminal cases, as an extension of the informer's privilege"). The privilege may continue even after the conclusion of an investigation. See In re City of N.Y., 607 F.3d 923, 944 (2d Cir. 2010) (citation omitted) ("'An investigation . . . need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public").

Generally speaking, "[t]he purpose of [the law enforcement] privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." In re Dep't of Investigation of City of N.Y., 856 F.2d 481, 484 (2nd Cir. 1988). Several circuits have held that the party asserting the privilege has the initial burden of showing that the privilege applies. In re City of N.Y., 607 F.3d at 943 (citing, In re Sealed Case, 856 F.2d 268, 271–72 (D.C. Cir. 1988)). Because, however, "the law enforcement privilege is qualified, not absolute, . . . '[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information.'" Id. (citations omitted).

Recently, the Sixth Circuit weighed in on the issue of the law enforcement privilege. In United States v. Pirosko, 787 F.3d 358 (6th Cir. 2015), a child pornography case, defendant filed a motion to compel discovery regarding the "law enforcement tools and records used" to search his

4

computer equipment. In affirming the denial of that request, the Sixth Circuit stated that "[i]n evaluating the government's privilege argument, we agree with the district court's decision to apply a balancing approach, weighing the government's concerns against the needs articulated by [defendant]." Id. at 365. The Court went on to observe that is conclusion did not mean that the government can utilize investigative techniques "sans scrutiny":

> As a general matter, it is important that the government's investigative methods be reliable, both for individual defendants . . . and for the public at large. Still, we think that it is important for the defendant to produce some evidence of government wrongdoing. We have held as much in cases involving more traditional police investigation techniques.

Id. at 366.

### A.

The Government does little to explain its concerns or the need for the invocation of the privilege in this case. Rather, focusing solely on the tracking device, it blanketly asserts that "the law enforcement privilege permits the government to withhold information about sensitive investigative techniques, including the type and precise location of equipment used in electronic surveillance." (Docket No. 62 at 2).

The use of tracking devices hidden in packages and parcels as an investigative tool is hardly a secret. Cases abound describing their use in controlled deliveries. See e.g., United States v. Albiola, 624 F.3d 431, 434-35 (7th Cir. 2010); United States v. Moore, 612 F.3d 698, 700 (D.C. Cir. 2010); United States v. Ware, 63 Fed. App'x 863, 865 (6th Cir. 2003); United States . Gonzalez, 328 F.3d 543, 545 (9th Cir. 2003). Descriptions about the use of such devices, sometimes called an electronic device alarm or electronic parcel wire, can also be easily found on the Internet. See, e.g., How to Legally Accept a Drug Package as Per Police and Prosecutors,

5

DARK WEB NEWS (May 14, 2014) [http://darkwebnews.com/help-advice/legally-accept-drug-package-per-police-prosecutors]; Controlled Delivery with Tracking Device Used to Bust Florida Man Importing Chinese Steroid Powder, STEROID.COM [https://www.steroid.com/blog/Controlled-Delivery-with-Tracking-Device-Used-to-Bust-Florida-Man-Importing-Chinese-Steroid-Powder] (both websites last visited on Dec. 17, 2015).

Presumably then, the Government's concern is with the devices themselves, and not their use. Yet, the only evidence before the Court is that the tracking device utilized in this case was relatively unsophisticated and low-tech, consisting of contacts that completed an electric circuit and which, when broken or shifted, emitted beeping noises that could be heard by the monitoring officers or technicians. Even assuming some sophistication in the device, it is hidden inside the package or parcel to be delivered, suggesting that a miscreant's knowledge of how it operates would be of relatively limited (if not of no) value.

The three cases on which the Government relies to support its position are either distinguishable or inapposite.

In United States v. Green, 670 F.2d 1148 (D.C. Cir. 1981), the District of Columbia Circuit recognized a "surveillance location privilege." In doing so, the court wrote:

> We believe that policy justifications analogous to those underlying the well-established informer's privilege support a qualified privilege protecting police surveillance locations from disclosure. Like confidential informants, hidden observation posts may often prove to be useful law enforcement tools, so long as they remain secret. Just as the disclosure of an informer's identity may destroy his future usefulness in criminal investigations, the identification of a hidden observation post will likely destroy the future value of that location for police surveillance. The revelation of a surveillance location might also threaten the safety of police officers using the observation post, or lead to adversity for cooperative owners or occupants of the building. Finally, the assurance of nondisclosure of a surveillance location may be necessary to encourage property owners or occupants to allow the police to make such use of their property.

Id. at 1155.

The Government does not explain how allowing counsel to examine the tracking device in this case to see if it was actually functioning will destroy the value of the use of such devices, or how such an examination will impact future investigations involving controlled deliveries. Nor does it identify any particular harm that would result from an examination of the device.

The second case, Cintolo, 818 F.2d 980, dealt with the limitation of cross-examination regarding "sensitive investigative techniques," more specifically, the location of transmitters in a room. Like the court in Green, the First Circuit viewed "this situation" as a "pervasive parallel" to "what is commonly referred to as the 'informer's privilege.'" Id. at 1002 n. 13. "Echo[ing] the concerns voiced by the Eleventh Circuit" in United States v. Van Horn, 789 F.2d 1492 (11th Cir. 1986) (the third case the Government relies on in this case), the court held that "discoverability of this kind of information will enable criminals to frustrate future government surveillance and perhaps unduly jeopardize the security of ongoing investigations." Cintolo, 818 F.2d at 1002.

Again, the Government does not explain how examination of the tracking device to see if it worked would frustrate future investigations or jeopardize security because the location of the device (inside of packages) is know. Indeed, it appears that the very virtue of the device lies in the fact that it is hidden and unobservable by the recipient.

Admittedly, the decision in Van Horn, 789 F.2d 1492 (11th Cir. 1986) contains broad language that aids the Government's position. There, the Eleventh Circuit wrote:

> We hold that the privilege applies equally to the nature and location of electronic surveillance equipment. Disclosing the precise locations where surveillance devices are hidden or their price specifications will educate criminals regarding how to protect themselves against police surveillance. Electronic surveillance is an important tool of law enforcement, and it's effectiveness should not be unnecessarily

compromised. Disclosure of such information will also educate persons on how to employ such techniques themselves[.]

789 F.2d at 1508.  Even so, the court went on to "stress that the necessity determination requires a case by case balancing process, and that we have established no fixed rules about the discoverability of electronic surveillance techniques in criminal cases." Id.

**B.**

The applicability or inapplicability of the law enforcement privilege aside, Defendant has failed to establish entitlement to the discovery he seeks.

So far as relevant, Rule 16 of the Federal Rules of Criminal Procedure provides:

**Documents and Objects**. Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
(i) the item is material to preparing the defense;

(ii) the government intends to use the item in its case-in-chief at trial; or

(iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(e).  Only the first subsection of the rule is at issue because the Government has represented that it does not intend to introduce the tracking device or GPS at trial, and those items were not obtained from Defendant.

"In interpreting the issue of materiality," the Sixth Circuit has "held that Federal Rule of Criminal Procedure 16 applies only to shield' claims that 'refute the Government's arguments that the defendant committed the crime charged.'" Pirosko, 787 F.3d at 367 (citation omitted). "'A defendant does not satisfy [the] requirement that an object be material to the preparation of the defendant's defense by means of merely conclusory arguments concerning materiality.'" United

States v. Lykins, 428 F. App'x 621, 624 (6th Cir. 2011) (quoting United States v. Phillip, 948 F.2d 241, 250 (6th Cir. 1991)). "Rather, defendant must make a prima facie showing of materiality." Id.

Apart from the requirements of Rule 16, "[t]he holding in Brady v. Maryland [373 U.S. 83 (1963)] requires disclosure . . . of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" United States v. Bagley, 473 U.S. 667, 674 (1985). "Evidence is favorable if either exculpatory or impeaching, LaMar v. Houk, 798 F.3d 405, 415 (6th Cir. 2015), and "is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different," Cone v. Bell, 556 U.S. 449, 469 (2009).

Defendant has not shown that the ability to examine the tracking devices in question (or their supporting logs) are material to the issue of whether he unlawfully received with the intent to distribute methylone, nor has he shown that such evidence is exculpatory in relation to his guilt or innocence of the crimes with which he is charged. He argues, however, that "[t]here is no question that the discovery [he] seeks is relevant to a potential suppression motion: it is evidence of the very precondition that triggered the anticipatory search warrant." (Docket No. 58).[2]

A fundamental problem with Defendant's argument is that the Court has had the opportunity to assess the credibility of Detective Loucks. The Court credits his testimony that (1) he was present when the tracking device was placed in the Pleasant Green Road parcel; (2) an officer posing as a mail carrier delivered the package; (3) Defendant was observed entering the residence and observed

---

[2] In support of his Motion, Defendant relies on Martinez v. United States, 793 F.3d 533, ___ (6th Cir. 2015) for the proposition that "'[t]he scope of the government's Brady obligations extends to evidence material to an affirmative defense or the ability of a defendant to assert his constitutional rights,' such as pursuing a suppression motion." (Id. at 3). Since the filing of his motion, however, the opinion in Martinez has been vacated and a rehearing *en banc* granted.

9

leaving 5-10 minutes later with the package in hand; and (4) the package was found in the back of Defendant's vehicle.

Even assuming the device did not alert by "beeping" (contrary to Detective Loucks testimony), or even accepting the wholly unsupported premise that no tracking device was even used, an examination of the tracking device, the GPS, and the supporting documentation would not dispel the fact that Defendant was observed carrying a package known to contain drugs and arrested as a result. In this sense, the "very precondition" of the anticipatory search warrant was superfluous, particularly since the Government has indicated that nothing inculpatory was found during the search of the residence pursuant to that warrant.

### III.

On the basis of the foregoing, Defendant's "Motion to Compel the Government to Produce Evidence" (Docket No. 58) will be denied. An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE